**RAILROAD COMMISSION OF TEXAS, et al., Appellants,**

v.

**SOUTHERN PACIFIC TRANSPORT COMPANY OF TEXAS AND LOUISIANA, Southwestern Transportation Company, and The Common Carrier Motor Freight Association, Inc., Appellees.**

No. 9084.

Court of Appeals of Texas, Texarkana.

March 15, 1983.

Phyllis B. Schunck, Asst. Atty. Gen., Austin, Ralph W. Currie, Dallas, for appellants.

Frank C. Brooks, Brooks & Brooks, Dallas, Lloyd M. Roach, Tyler, for appellees.

CORNELIUS, Chief Justice.

In this case we must decide if the Texas Railroad Commission may lawfully devise a regulatory scheme for common carrier motor carriers setting uniform rates based on operating costs and revenue requirements of a representative sample of the carriers, even though the rates may be noncompensatory to some of the carriers because of their higher costs of doing business. We answer the question in the affirmative and reverse the judgment of the district court which held the railroad commission order unconstitutional.

The commission ordered general rates for the carriers based upon operating costs and income requirements of eight carriers which carry approximately 90% of the regulated intrastate traffic in Texas, and which were deemed to be representative of the twenty-three carriers affected by the order. The rates were set to allow an average operating ratio of 90%, i.e., operating costs amounting to 90% of revenues. Southern Pacific and Southwestern petitioned the commission for new and higher rates to apply to their intrastate traffic on the ground that they could not operate that business profitably at the general rates because under their labor contracts with the Teamster's Union they were required to pay higher wages than the other companies paid. There was evidence that the general rates afforded them an intrastate average operating ratio of 128.8%, representing an expenditure of $1.28 for every $1.00 of revenue, and that they were required to depend upon revenues from their interstate business to continue operations. The commission denied their request. On appeal the district court held the commission's order unconstitutional because it constituted an unlawful taking of private property in violation of Federal and State constitutional

guarantees, exceeded the commission's statutory authority, and was not based upon substantial evidence.

■ Tex.Rev.Civ.Stat.Ann. art. 911b(4)(a) (Vernon 1964) requires the Texas Railroad Commission to regulate the transportation of property for hire by motor vehicles on the public highways of the State, and to prescribe the maximum and minimum rates for such service. The primary goal of rate setting is to provide the public with the best service at a cost which does not exceed its reasonable value. In determining what constitutes a reasonable rate, the carriers' cost of doing business and opportunity for a fair return are important considerations, but it is not constitutionally required that each affected carrier be *guaranteed* a fair return, unless the regulatory scheme constitutes a "taking of property" in the constitutional sense. *Permian Basin Area Rate Cases,* 390 U.S. 747, 88 S.Ct. 1344, 20 L.Ed.2d 312 (1968). We cannot conclude that the denial of the higher rates in this proceeding constitutes an unlawful taking of property. Southern Pacific and Southwestern argue otherwise, and cite numerous cases dealing with railroad companies where it has been held that noncompensatory rates are unconstitutional, but those cases are inapposite. Railroads are not free to terminate their service to the public, and if prescribed rates for them are noncompensatory the forced continuation of service would constitute a taking of private property for public use without just compensation. *Stone v. Farmers Loan and Trust Co.,* 116 U.S. 307, 6 S.Ct. 334, 29 L.Ed. 636 (1886). That is not the case with respect to the carriers involved here. If the rates for them are noncompensatory because of their higher costs, they can either reduce costs or terminate the service. There is no forced taking in those circumstances. *Permian Basin Area Rate Cases,* supra; *Bowles v. Willingham,* 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892 (1944).

■ The setting of group rates on the basis of operating costs and revenues of a representative sample of the affected carriers or regulated businesses does not violate the federal or state constitutions, and the fact that high cost operators may be seriously affected or may have the value of their property reduced will not of itself defeat the order's validity. *Permian Basin Area Rate Cases,* supra; *Bowles v. Willingham,* supra; *Florida Rate Conference v. Florida Railroad and Public Utilities Commission,* 108 So.2d 601 (Fla.1959); 60 C.J.S. *Motor Vehicles* § 54(1) (1969). The feasibility and practicality of rate setting based upon representative evidence rather than on an individual basis is a legitimate consideration in upholding its constitutionality. *Bowles v. Willingham,* supra, and cases there cited.

We also fail to find any statutory prohibition against group or collective rate making procedures such as were followed here. In fact, the amendment to Article 911b(4)(a), effective April 10, 1981, added a provision specifically requiring the commission to insure nondiscriminatory rates by adopting collective rate making procedures.

In summary, we find the rates do not constitute an unlawful taking of property as to Southern Pacific and Southwestern, we find no constitutional or statutory barrier to the setting of rates based on the costs and revenues of a representative group of carriers, and we find substantial evidence in the record to support the railroad commission's order.

The judgment of the district court is reversed and judgment is here rendered affirming the commission's order.